UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RALPH MISSELL,

                Plaintiff,

        v.

DIANE DAVIS,
Town of Urbana Dog Control Officer, et al.,

                Defendants.
_____

DECISION & ORDER

17-CV-6140P

## PRELIMINARY STATEMENT

Plaintiff Ralph Missell ("Missell") has sued defendants Diane Davis ("Davis"), who was the Town of Urbana's Dog Control Officer, and licensed veterinarian Dr. Pepi Leids ("Leids") (together with Davis, the "defendants"), pursuant to 42 U.S.C. § 1983, alleging that the euthanasia of his pet dog violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. (Docket # 1). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 13). Now pending are Davis's and Leids's motions for summary judgment. (Docket ## 31, 33).

For the reasons stated below, Davis's motion is granted in its entirety, and Leids's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Missell is a resident of Hammondsport, New York. (Docket ## 31-13 at ¶ 4; 33-5 ¶ 2).[1] On October 18, 2015, Missell's dog, Henry, went missing after being let outside that

---

[1] Many of the underlying facts contained herein are undisputed. For ease of reference, in those instances in which Missell has admitted facts asserted in Davis's Statement of Undisputed Material Facts (Docket # 31-13) or

morning. (Docket ## 31-13 at ¶¶ 5, 7, 9, 10; 33-5 at ¶¶ 3, 5, 7). At around noon, Missell attempted unsuccessfully to locate the dog by searching his property and portions of the surrounding neighborhood and by speaking to one neighbor. (Docket ## 35-4 at ¶ 8; 36-5 at ¶ 6). At no point did Missell report Henry as missing. (Docket ## 31-13 at ¶ 8; 33-5 at ¶¶ 6, 8-10). Henry was not wearing any identification tag or collar. (Docket ## 31-13 at ¶ 11; 33-5 at ¶ 11).

That afternoon, Henry appeared on the property of Scott Richmond ("Richmond"), one of Missell's neighbors. (Docket ## 31-13 at ¶ 15; 33-5 at ¶ 26).[2] Richmond observed that the dog could barely stand and described it as "lifeless" and "beyond skinny." (Docket ## 31-13 at ¶¶ 16-18; 33-5 at ¶¶ 27-29). Due to the dog's condition, Richmond called 911 and Davis. (Docket ## 31-13 at ¶¶ 19-21; 33-5 at ¶ 30).

Davis arrived at Richmond's property to find the dog emaciated, covered in tumors (several of which were open and bleeding on its face), whimpering, having trouble breathing, and displaying glassy eyes. (Docket ## 31-13 at ¶ 24; 33-5 at ¶ 31). Davis's protocol for retrieving a stray dog[3] was to pick it up and transport it to the kennel that contracted with the Town of Urbana. (Docket # 31-13 at ¶ 22). During the period relevant to this case, the Four Winds Kennel (the "Kennel"), which Betty Walden ("Walden") operated, held that contract.

---

Leids's Statement of Undisputed Material Facts (Docket # 33-5), the Court will cite only to defendants' Statements. (*See* Docket ## 35-4 (response to Davis's Statement); 36-5 (response to Leids's Statement)).

[2] Missell contends that Richmond "knew" the dog was Henry and belonged to Missell. (Docket ## 35-4 at ¶ 19; 36-5 at ¶ 11). At best, the record demonstrates that Richmond "thought," but "could not be sure," that the dog was Henry. (Docket ## 31-5 at 8; 35-2 at 19). In any event, it is undisputed that Henry was not wearing an identification tag or collar. (Docket ## 31-13 at ¶ 11; 33-5 at ¶ 11).

[3] Missell contends that the dog was not a "stray" because Richmond told Davis that he believed the dog was Henry. (Docket ## 35 at 7; 35-4 at ¶ 19). Again, the record shows that Richmond's belief was not certain and that the dog was not otherwise identified when Davis arrived.

(Docket ## 31-13 at ¶ 25; 33-5 at ¶ 33).[4]  Given Henry's condition, Davis transported him to the Kennel.  (Docket ## 31-13 at ¶ 25; 33-5 at ¶ 33).

The following morning, October 19, 2015, at around nine o'clock, Davis called Walden to check on the status of the dog.  (Docket # 31-13 at ¶ 26).  Walden told Davis that the dog had survived the night and that she had called Leids, a New York State licensed and practicing veterinarian, to examine the dog.  (Docket ## 31-13 at ¶ 26; 33-5 at ¶¶ 35, 37).  At that point, Davis began to investigate the identity and owner of the dog; she contacted the Town of Urbana's Town Clerk for licensing information, reviewed the Town's rabies vaccination information, and contacted the Steuben Veterinary Clinic.  (Docket # 31-13 at ¶¶ 27-28).  Other than the morning call, Davis did not communicate with Walden or anyone at the Kennel until Walden told her later in the day that Henry had been euthanized.  (*Id.* at ¶¶ 29-30).  Davis eventually determined that the dog was Henry and belonged to Missell.  (*Id.* at ¶ 31).

Leids examined Henry on October 19, 2015, to determine "whether or not the dog could survive in the [K]ennel for five days and to assess the condition of the dog."  (Docket # 33-5 at ¶¶ 48, 52).[5]  Leids observed that Henry, who was not identified at that time, was in poor physical condition, had tumors all over its body, and could not keep food down without vomiting; Leids opined that "the dog was in so poor physical condition, it could not be treated as it was too far gone."  (Docket # 33-5 at ¶¶ 37, 38, 41, 43, 44).  Based on her training and

---

[4] Under the contract, Walden agreed to accept dogs seized by agents of the Town, hold the dogs for the statutorily-prescribed period of time, and handle the disposition of dogs brought to the Kennel, in accordance with New York law.  (Docket # 31-11 at ¶¶ 2, 3, 4, 5).  Neither Walden nor the Kennel are defendants.

[5] New York law permits a "lost [or] strayed" animal to be euthanized "if upon examination a licensed veterinarian shall certify in writing . . . that the animal is so maimed, diseased, disabled, or infirm so as to be unfit for any useful purpose and that humane euthanasia is warranted." N.Y. Agric. & Mkts. Law § 374(1).  Otherwise, a pound or shelter may not euthanize the animal without waiting at least five days to permit the animal to be "redeemed by its owner."  *Id.* at § 374(2).  Leids was aware of and received training under these statutes.  (Docket # 33-5 at ¶ 36).

3

experience, Leids's observations of Henry's condition led her to conclude that it would be more humane to euthanize the dog than to keep it in the Kennel for five days. (Docket ## 33-4 at 2; 33-5 at ¶¶ 46, 51-54). As a result, Leids euthanized the dog that same day. (Docket # 33-5 at ¶ 46). She did not confer with Davis about the decision. (Docket # 31-13 at ¶ 29). Missell disputes that Henry's condition was as grave as Davis and Leids describe. (Docket ## 35-4 at ¶¶ 16-18; 36-5 at ¶¶ 15-17).

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant*

4

*v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 502 U.S. 849 (1991). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

> As the Second Circuit has explained:
>
> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### A.  Davis's Motion for Summary Judgment

Missell concedes that he cannot proceed against Davis in her official capacity, that Davis did not violate his substantive due process rights, and that Davis is not liable for punitive damages. (Docket # 35 at 2, 8, 9-10). The Court thus addresses Missell's remaining Fourth Amendment and Fourteenth Amendment claims, brought pursuant to 42 U.S.C. § 1983.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). A plaintiff must also establish "a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004).

5

1. **Fourth Amendment Claim**

Davis argues, among other things, that her conduct in retrieving Henry and taking him to the Kennel was not an unreasonable seizure of personal property because New York State law directed her to do so under the circumstances. (Docket # 31-14 at 7-8). She also argues that she is entitled to qualified immunity. (*Id.* at 11-13).

The Fourth Amendment protects against "unreasonable . . . seizures" of personal property. U.S. CONST. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). To determine reasonableness, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure." *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (alterations and quotations omitted). A plaintiff bears the burden of proving that a seizure was unreasonable. *Id.* at 651.

Only two possible seizures occurred in this case: (1) the retrieval of Henry from Richmond's property and entrustment to the Kennel; and (2) the euthanasia of Henry. Undisputedly, Davis was involved only with the first seizure.

Significantly, Missell explicitly concedes that Davis did not unreasonably seize Henry because she acted pursuant to New York State law. (Docket # 35 at 7) ("[p]laintiff concedes that the initial seizure of Henry was done pursuant to statute and does not constitute an unreasonable seizure as defined by the [Fourth] Amendment"). This concession effectively defeats his only Fourth Amendment argument against Davis. This alone is grounds to dismiss the claim. *See*, *e.g.*, *Bonilla v. Smithfield Assocs. LLC*, 2009 WL 4457304, *4 (S.D.N.Y. 2009)

(deeming claims "effectively abandoned" and dismissing them as a matter of law where plaintiff failed to respond to defendant's dismissal arguments).

Missell's concession aside, the record demonstrates that Davis acted in accordance with her statutory duties. Specifically, in order to "control . . . the dog population," New York State law directs dog control officers to seize any unidentified dog that is not on its owner's property. *See* N.Y. AGRIC. & MKTS. LAW §§ 106, 117(1)(a) ("[a]ny dog control officer . . . [,] acting pursuant to [her] special duties[,] . . . *shall* seize . . . any dog which is not identified and which is not on the owner's premises") (emphasis supplied). An "identified dog" is "any dog carrying an identification tag," which is a "tag issued by the licensing municipality . . . set[ting] forth an identification number, together with the name of the municipality, the state of New York, contact information . . . for the municipality and such other information as the licensing municipality deems appropriate." *Id.* at §§ 108(11), (12).

The undisputed facts establish that Henry was not wearing an identification collar or tag, and thus was not "identified" within the meaning of the statute, and was not on Missell's property when Davis seized him. Therefore, Davis was authorized, if not required, by statute to seize the dog; under these circumstances, Davis's seizure did not contravene the Fourth Amendment. *See*, *e.g.*, *Skinner v. Chapman*, 326 F. Supp. 2d 431, 433 (W.D.N.Y. 2004) (dog control officer's seizure of dog pursuant to state and local law not constitutionally unreasonable under Fourth Amendment).

Here, the government's interests in seizing unidentified, at-large dogs – as Henry was – outweighed Missell's interests in his dog. The government has a legitimate interest in controlling the dog population. N.Y. AGRIC. & MKTS. LAW § 106. Indeed, "[w]here a pet is found at large, the state undoubtedly has an interest in restraining it so that it will pose no danger

7

to the person or property of others." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001). Moreover, Missell "forfeited many of [his] possessory interests" in Henry by allowing the dog "to run at large, unleased, uncontrolled, and unsupervised" on October 18, 2015, because at that point, the dog "cease[d] to become simply a personal effect and t[ook] on the nature of a public nuisance." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 206 (4th Cir. 2003). Under the totality of the circumstances, I find as a matter of law that Davis did not violate the Fourth Amendment by seizing Henry and taking him to the Kennel. *See Brown v. Muhlenberg Twp.*, 269 F.3d at 210 ("[t]he dog catcher thus does not violate the Fourth Amendment when he or she takes a stray into custody").

Accordingly, Missell's Fourth Amendment claim against Davis is dismissed.

### 2. **The Fourteenth Amendment**

Missell's remaining contention is that Davis failed to give him notice of Henry's initial seizure, which proximately caused Henry's death. (Docket # 35 at 7-8). In Missell's view, "had [Davis] promptly notified [him] that Henry had been seized, [he] would have been able to recover the animal prior to Henry being euthanized." (*Id.* at 8). Davis argues that she was not personally involved in euthanizing Henry and thus did not owe any due process to Missell prior to the euthanasia. (Docket # 37 at 9-11).

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012), *cert. denied*, 569 U.S. 958 (2013). Still, "in all [Section] 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). "To proximately cause a procedural due-process violation,

therefore, a defendant must be personally involved in the violation." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.), *cert. denied*, 137 S. Ct. 380 (2016).

Davis was not involved in the decision to euthanize Henry. Missell attempts to show otherwise by arguing that Davis failed to act in accordance with her duties under Section 117(6) of New York's Agriculture and Markets Law ("Section 117(6)") and that the alleged failure led to Henry's death. (Docket # 35 at 7-8). That argument, however, misreads Section 117(6) and is meritless.

As an initial matter, Section 117(6) did not apply to Davis's seizure of Henry. That section entitles the owner of an "identified dog" to "prompt[]" notice "of the facts of seizure and the procedure for redemption." *See* N.Y. AGRIC. & MKTS. LAW § 117(6). As explained above, Henry was not "identified" because he was not wearing an identification tag or collar when Davis seized him. *See* N.Y. AGRIC. & MKTS. LAW §§ 108(11), (12); *see also Kostiuk v. Town of Riverhead*, 570 F. Supp. 603, 609 (E.D.N.Y. 1983) (finding that dog was not "identified" where it did not have an identification tag when seized). Missell's contention that Henry was "identified" merely because Richmond suspected that the dog might have belonged to Missell (Docket # 35 at 7, 8) misses the point. (*See* Docket # 39 at 33). Simply put, absent an identification tag or collar, Henry was not identified within the meaning of the statute. Therefore, Section 117(a) was not triggered and did not require Davis to contact Missell.[6]

Even if Section 117(a) did apply – which it did not – Missell has not shown that Davis failed to act in accordance with the statute, or how any failure proximately caused his injury. Section 117(6) requires a dog control officer to provide "prompt" notice to a dog owner of record, either "personally *or* by certified mail," not, as Missell contends, immediately *and*

---

[6] Based on this reasoning, the Court also rejects Missell's contention that Davis had an "implied duty" to contact Missell based on Richmond's suspicion that the dog was Henry. (Docket # 35 at 7).

9

personally. *See* N.Y. AGRIC. & MKTS. LAW § 117(6) (emphasis supplied). Indeed, in this case, the day immediately following Henry's retrieval from Richmond's property and before learning of Henry's death, Davis began an investigation to identify the dog and its owner, presumably to notify the owner of Henry's retrieval and placement at the Kennel. The statute required nothing more of Davis.

In addition, the record clearly reveals that Davis knew nothing about the decision to euthanize Henry until after it had occurred. Any argument that prompt statutory notice to Missell, which could have been accomplished through certified mail, would have prevented Henry's death on October 19, 2015, is speculative at best. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("speculation alone is insufficient to defeat a motion for summary judgment").

In sum, Missell has not shown that Davis was personally involved in Henry's death. Accordingly, Missell's Section 1983 Fourteenth Amendment claim against her fails as a matter of law and is dismissed.

### 3. **Qualified Immunity**

Alternatively, Davis argues that she is entitled to qualified immunity because she acted pursuant to her statutory duties and her conduct did not violate any clearly-established right that a reasonable person in her position would have known. (Docket # 31-14 at 11-13). Missell disagrees, contending that Davis failed to give prompt notice under Section 117(6), and that "[a] reasonable individual in Davis' position would have simply taken the dog to [Missell]," as opposed to the Kennel. (Docket # 35 at 8-9).

"Government actors performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Summary judgment may be granted on this ground if a defendant can demonstrate that the asserted right was not clearly established at the time of the alleged incident, or that it was nonetheless objectively reasonable for the official to believe that his [or her] conduct did not violate the asserted right." *Dukes v. Schuck*, 2013 WL 12181002, *7 (W.D.N.Y. 2013), *aff'd*, 637 F. App'x 37 (2d Cir. 2016) (summary order).

Here, Davis seized an unidentified dog from Richmond's property, took the dog to the Kennel, and, the following morning, began an investigation into the identity and owner of the dog. There is no evidence that any "clearly established" statutory or constitutional right required Davis to do anything different than what she did, let alone personally deliver Henry to Missell's residence immediately after retrieving the dog from Richmond's property, as Missell contends. That argument is necessarily based on how Missell wishes Davis should or would have acted, which is not the correct inquiry for purposes of qualified immunity. *See Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) ("[w]hen a plaintiff alleges that a[n] [officer's] conduct renders him personally liable in damages, [the court's] inquiry is not whether the officer *should have* acted as he did"[;] "[n]or is it whether a singular, hypothetical entity exemplifying the 'reasonable officer' . . . *would have* acted in the same way"[;] "[i]t is instead whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful").

In the absence of any "clearly established" right to the contrary, I find as a matter of law that Davis's conduct was objectively legally reasonable, and that a reasonable dog control officer in Davis's situation could have found that Davis's conduct was lawful. Therefore, alternatively, Davis is entitled to qualified immunity.[7]

### B. Leids's Motion for Summary Judgment

Leids principally argues that Missell's constitutional claims fail as a matter of law because he has not adduced any expert testimony establishing that Leids committed veterinary malpractice in euthanizing Henry and is precluded from doing so at this stage of the case. (Docket # 33-6 at 2-5).[8] Without such testimony, Leids maintains, Missell cannot establish that her conduct deviated from accepted standards of veterinary practice and thus cannot show that her conduct was constitutionally deficient. (*Id.*). Missell counters, among other things, that expert testimony is not required to prove reasonableness under the Fourth Amendment or to establish whether Leids afforded Missell due process prior to euthanizing Henry. (Docket # 36 at 1).

The Court is unpersuaded by Leids's narrow argument for dismissal, which appears to misperceive the nature of Missell's claims. (Docket # 33-6 at 3-4) (identifying elements of state law veterinary malpractice claim). Missell has not pled a state law malpractice claim. Rather, he has alleged constitutional violations (Docket # 1 at ¶¶ 29-34), which are distinct claims.

---

[7] Leids does not contend that she is entitled to qualified immunity. (*See generally* Docket # 33).

[8] Leids, like Davis, also argues that Missell cannot pursue punitive damages against her. (Docket # 33-6 at 6). Missell did not respond to this argument in his opposition papers. (*See generally* Docket # 36). Therefore, the Court deems Missell's claim for punitive damages against Leids abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) ("a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims"). Accordingly, the Court grants summary judgment in favor of Leids on Missell's claim for punitive damages.

Moreover, it is well-settled that "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), not whether a defendant committed malpractice. Leids provides no authority for her proposition that the Fourth Amendment's reasonableness inquiry requires expert testimony. Indeed, in the Eighth Amendment deliberate indifference context, the Second Circuit has "never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Instead, the "inquiry remains whether the treating physician . . . was deliberately indifferent to a [plaintiff's] serious medical needs, not whether the doctor's conduct is actionable under state malpractice law." *Id.* at 68; *see also Avallone v. Hofman*, 2008 WL 4838143, *2 (D. Vt. 2008) ("the [c]ourt should not dismiss [plaintiff's constitutional deliberate indifference] claim simply because he has failed to identify sources of expert testimony on questions related to the applicable standard of medical care").

As in the Eighth Amendment context, the Court is unwilling to dismiss Missell's constitutional claims for lack of expert testimony, especially where Leids has failed to demonstrate that such a requirement exists as a matter of law. The inquiry remains whether Leids's decision to euthanize Henry and to do so without attempting to locate his owner was reasonable under the Fourth Amendment and comported with the Fourteenth Amendment, not whether Leids committed malpractice under state law. *See Hathaway v. Coughlin*, 37 F.3d at 68.

The Court expresses no view on Missell's ultimate ability to prove whether Leids's conduct in this case was unconstitutional under the totality of the circumstances. The Court's determination here is confined to a rejection of the one narrow argument Leids asserts in

this motion, namely, that Missell's constitutional claims are deficient as a matter of law without expert testimony. Accordingly, Leids's motion for summary judgment on that basis is denied.

## **CONCLUSION**

For the above-stated reasons, Davis's motion for summary judgment **(Docket # 31)** is **GRANTED**, and Leids's motion for summary judgment **(Docket # 33)** is **GRANTED in PART and DENIED in PART**. Missell's claims against Davis are dismissed in their entirety and with prejudice, and the Clerk of Court is directed to enter judgment in favor of Davis and terminate her from this action. Missell's claims against Leids may proceed, although he may not pursue punitive damages against her.

**IT IS SO ORDERED.**


                                                         *s/Marian W. Payson*
                                                         MARIAN W. PAYSON
                                                      United States Magistrate Judge

Dated: Rochester, New York
       March 12, 2019